**Wesley S. BRADY and Rosaria S. Brady, Plaintiffs–Appellants,**

v.

**TOWN OF COLCHESTER, A municipal corporation in the State of Connecticut, Susan Marvin, in her capacity as Executrix of the Estate of Helen Gay, Individually and in her capacity as First Selectman of the Town of Colchester, Thomas E. Adams, James Cahill, Grace Downey, Joseph Kilrain, James Miller, Joseph Ous, Adam Piekarz, Donna Skawinski and Donald Standish, Individually and in their official capacities as members of the Colchester Zoning and Planning Commission, Joseph S. Sudik, Individually and in his official capacity as Colchester Building Inspector, and John S. Barnecki, Individually, Defendants–Appellees.**

**No. 702, Docket 87–7908.**

United States Court of Appeals, Second Circuit.

Argued March 21, 1988.

Decided Dec. 1, 1988.

Kathleen Eldergill (Beck & Eldergill, Manchester, Conn., of counsel), for plaintiffs-appellants.

James J. Szerejko (Halloran, Sage, Phelon & Hagarty, Hartford, Conn., of counsel), for defendants-appellees.

Before FEINBERG, Chief Judge, and CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

This case involves a zoning dispute which arose out of plaintiffs-appellants' attempts to renovate and lease commercial property located in Colchester, Connecticut. While this Court has long recognized that purely local zoning disputes are generally matters which are best left to municipal and state agencies to resolve, from time to time we are presented with cases that warrant, and indeed require, the attention of the federal judiciary. We believe that the present matter properly falls into this latter category.

Wesley and Rosaria Brady appeal from so much of a judgment of the United States District Court for the District of Connecticut, *Blumenfeld, J.,* as dismissed their equal protection, due process, and first amendment claims [1] against the Town of Colchester, the First Selectman of the Town of Colchester, members of the Colchester Zoning and Planning Commission, the Colchester Building Inspector, and the former Building Official and Zoning Enforcement Officer of the Town of Colchester. The district court granted defendants' motion for summary judgment and dismissed the plaintiffs' § 1983 claims after concluding that the plaintiffs had not produced sufficient evidence to demonstrate that there were any genuine issues of material fact underlying their claims against the defendants. For the reasons stated hereinafter, we affirm the grant of summary judgment with respect to the Bradys' first amendment and procedural due process claims. However, because we believe that the plaintiffs did produce sufficient evidence to support their equal protection and substantive due process claims, we reverse the grant of summary judgment as to those claims and remand for further proceedings.

## BACKGROUND

On July 13, 1983, plaintiffs-appellants Wesley and Rosaria Brady purchased a two-story, colonial building in the Town of Colchester, Connecticut, for the purpose of developing it as a commercial property. Shortly thereafter, the Bradys were approached by one of the burgesses of the Borough of Colchester about the possibility of leasing the first floor of their building.

The Borough of Colchester ("the Borough") is a separate political subdivision located entirely within the boundaries of the Town of Colchester. At the time the Borough sought to lease the first floor of the Bradys' building, the Borough was primarily controlled by Democrats, and the Town of Colchester was controlled by Republicans. Apparently these political differences generated a considerable amount of friction between the two governmental entities during the summer and fall of 1983.

The Bradys agreed to lease the subject premises to the Borough, and on July 27, 1983, the Borough voted to enter into a five-year fixed lease with Wesley Brady to rent the first floor as office space for $850.00 per month. According to newspaper accounts, which form part of the record on appeal, the Borough chose the Brady building for its offices because of the building's proximity to Town Hall and other town municipal offices.

Shortly after the Borough voted to enter into a lease for the Bradys' first floor premises, either in late July or early August of 1983, one of the burgesses informed Wesley Brady that he would have

---

1. Count Two of the plaintiffs' complaint also alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26; however, the district court granted defendants' motion for summary judgment and dismissed these claims as well. Plaintiffs do not challenge the district court's dismissal of the antitrust claims in this appeal.

to make certain renovations to the property before the space would suit the Borough's needs. Specifically, the Borough informed Brady that handicapped restrooms would have to be installed on the first floor, a handicapped ramp leading into the building would have to be built, and the garage area would have to be converted into office space. Wesley Brady agreed to make the necessary renovations and applied to the Town of Colchester for a building permit. On August 2, 1983, defendant John S. Barnecki, who at that time was the Town of Colchester's Building Official and Zoning Enforcement Officer, issued a building permit to Brady authorizing the alterations to the subject property.

On September 19, 1983, the Borough of Colchester signed a five-year lease with Wesley Brady for the rental of the first floor of the building, and began occupying some of the space. One day later, on September 20, 1983, appellee Barnecki wrote to Wesley Brady, stating as follows:

> Under Section 119.0 of the State of Connecticut Basic Building Code, a Certificate of Use and Occupancy is to be issued when the occupancy of a structure has been changed.
>
> The occupancy of the building at 14 Norwich Avenue has been changed from residential use to business use. The building is to remain vacant and no occupancy is *permitted* until the Certificate of Occupancy has been issued by this office.

(Emphasis in original). On September 24, 1983, Barnecki sent Brady a cease and desist order in which he ordered Brady "not to continue with any improvements to the building and not to do any site work on the property" until Brady received permission from the Colchester Planning and Zoning Commission ("CPZC"). The letter further requested that Brady submit a Class B Site Plan to the CPZC pursuant to town zoning regulations. According to appellees, Wesley Brady had to submit site plans in order to obtain a zoning permit, which Brady needed because the property supposedly was zoned for residential use only. According to the appellees, it was only after Brady had obtained a zoning permit to use the allegedly "residential" property com-

mercially, that he could then obtain the necessary building permits and certificates of occupancy which would entitle him to lease the first floor to the Borough. As we discuss below, Brady argues that the property was not residentially zoned and indeed that it was "used" as a commercial property for years prior to his purchase of it.

Although appellants now contest that there was ever a need to do so, between September 21 and November 2 of 1983, representatives of Wesley Brady appeared before the CPZC at least three times to discuss proposed site plans for the property. At no time, however, were they able to win approval of any single plan. It is undisputed that at one of these meetings, one of the members of the CPZC, defendant Donna Skawinski, stated that, "[I]f Mr. Brady wasn't renting to the Borough I would vote to accept the plans."

Apart from appellee Skawinski's statement, appellants also point to other evidence in support of their contention that during this time, the appellees tried to forestall the Borough's permanent occupation of the subject premises for purely political and improper reasons. For example, it is undisputed that Republican Town Chairman Alfred Goldstein had tried to persuade the Borough to rent one of his empty buildings in Colchester for less money, prior to the Borough's decision to rent from Wesley Brady, and that the Borough had rejected his overtures. Also, the record reveals that there was considerable negative press coverage in the local newspaper concerning the entire incident. The local news articles were directed towards both the Borough and Wesley Brady; they criticized first the Borough's decision to rent the subject premises and then Wesley Brady's purported inability to conform his property to local zoning regulations. It is undisputed that throughout this time period, appellee Helen Gay, a Republican and the Town's First Selectman, was also an owner and the Chairman of the Board of the local newspaper, and appellants contend that Gay was responsible for these negative articles.

On November 2, 1983, Wesley Brady instituted a mandamus proceeding in the

Connecticut Superior Court against Barnecki and the individual members of the CPZC seeking an order directing the defendants to cause the issuance of the necessary certificates of occupancy for the subject building. On December 20, 1983, Brady obtained a stipulated judgment in his favor in which the defendants in the mandamus proceeding agreed to issue a temporary certificate of occupancy for the first floor of the building immediately, and permanent certificates of occupancy for both the first and second floors of the building as soon as certain conditions relating to further site renovation were met, provided that these renovations occurred no later than July 15, 1984. The parties also stipulated that the state trial court would retain continuing jurisdiction to "assure compliance with the terms of the stipulated judgment."

On December 14, 1983, at an emergency meeting of the CPZC, the Commission approved the site plan referred to in the stipulated judgment and voted to authorize issuance of a zoning permit for the proposed commercial use. Six months later, on July 13, 1984, a permanent certificate of occupancy was issued for the first floor of the building. No certificate of occupancy, temporary or permanent, was issued to appellants in connection with the second floor of the property. Although the Bradys unsuccessfully contested the CPZC's refusal to issue a certificate for the second floor in a subsequent state court proceeding, they do not contest herein that or any other unfavorable state court determination. Nor have further proceedings occurred in the state judicial system in connection with the dispute which is before us on this appeal. As far as we are aware, as of the time this action was commenced, the Borough of Colchester occupied the first floor of the subject building and the second floor was vacant.

On December 17, 1984, Wesley and Rosaria Brady commenced a suit pursuant to 42 U.S.C. § 1983 in the United States District Court for the District of Connecticut, contending, *inter alia*, that the defendants had deprived them of "rights secured ... by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution." Specifically, the Bradys claimed that the Republican-controlled Town of Colchester and interested town officials had conspired to deny them a building permit, a zoning permit, and the necessary certificates of occupancy to which they were legally entitled, solely in order to prevent them from renting the first floor of the subject property to the Democratically-controlled Borough of Colchester.

In their complaint, the plaintiffs alleged: (1) that the defendant Barnecki, acting in conspiracy with the First Selectman, Helen Gay, as well as with the defendants Alfred Goldstein[2] and CPZC chairman Thomas Adams, "falsely asserted" that the Norwich Avenue property had undergone a change in use in issuing the September 1983 cease and desist order, and that the building had in fact "been devoted to commercial use" for a "long time prior to its purchase," Complaint ¶ 14; (2) that Helen Gay, in conspiracy with the other defendants, ordered Barnecki "never to issue a certificate of occupancy" for the building, Complaint ¶ 20; and (3) that members of the CPZC, in refusing to allow them to proceed with work on the property, "repeatedly insisted that the plaintiff comply with unnecessary, unlawful and irrational conditions not required of other persons owning commercial property in the same section of Colchester," Complaint ¶ 25. In response, the defendants moved for summary judgment with respect to all of the Bradys' claims, and the district court granted their motion.

The defendants presented several arguments in support of their motion for summary judgment. First, defendants argued that the plaintiffs had failed to state a legally sufficient or cognizable claim for which relief might be granted. Second, defendants argued that even if the plain-

---

**2.** Alfred Goldstein is no longer a defendant in this action. Goldstein filed separate motions for summary judgment which the district court granted in their entirety, and the plaintiffs do not appeal from those decisions.

tiffs had properly alleged a § 1983 claim, they had failed to come forward with sufficient evidence to establish a genuine and material factual dispute, such that would preclude the granting of summary judgment. Third, they contended that the determination of the Connecticut state court operated as res judicata with respect to the entire § 1983 claim.[3] The defendants also raised two affirmative defenses, which the district court did not address.[4] First, the defendants argued that because they could point to valid reasons for acting as they did, plaintiffs were precluded from challenging their decisions, given the strict standard for evaluating "mixed motive" actions of government officials articulated in *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Second, the defendants contended that to the extent they were being sued in their individual capacities, they were entitled to qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

After setting forth the standards applicable to summary judgment motions and the substantive law governing each of the plaintiffs' due process, first amendment, and equal protection claims, the district court found that "under no conceivable theory of a section 1983 claim [had] the plaintiffs established the existence of a material factual dispute that would entitle them to proceed to trial." Although the district judge acknowledged that plaintiffs are generally entitled to all inferences that are fairly supported by the evidence, he concluded that in this case, the Bradys' claims were based on nothing more than " 'the gossamer threads of whimsey [sic], speculation and conjecture.' " While we agree that the evidence presented by the Bradys was not overwhelming, and that the district court properly dismissed some of appellants' claims, we nonetheless hold that the evidence before the court was sufficient to establish a material factual dispute with respect to the Bradys' substantive due process and equal protection claims.

## DISCUSSION

The district judge, in a thorough opinion, addressed the standards governing the defendants' motion for summary judgment. In a motion for summary judgment, the movant bears the burden of establishing that there is no genuine issue of material fact to be submitted to the trier of fact, and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Celotex,* 477 U.S. at 330 n. 2, 106 S.Ct. at 2556–57 n. 2; *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1609.

Under the current formulation of the standards governing summary judgment motions, the moving party does not, however, bear the burden of proving that his opponent's case is wholly frivolous. *See Celotex,* 477 U.S. at 323–26, 106 S.Ct. at 2553–55; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See generally* Pierce, *Foreward—Summary Judgment: A Favored Means of Summarily Resolving Disputes,* 53 Brooklyn L.Rev. 279 (1987). In *Celotex,* the Supreme Court made it clear that in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving par-

---

**3.** At trial, the district court considered and rejected the defendants' res judicata arguments. After reviewing the state court proceedings, the district court found that the stipulated state court judgment did not operate as res judicata because the judgment "did not specifically address the issue of whether the defendants' conduct amounted to a violation of [42 U.S.C. § 1983]." That decision is not challenged on appeal.

**4.** Judge Blumenfeld chose not to address these defenses in his opinion because he had concluded that "the motion [to dismiss was] properly granted on the basis of the other three grounds."

ty's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim. Thus, the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions.

In cases such as this one, where the moving party has attempted to demonstrate that the nonmoving party's evidence is insufficient as a matter of law to establish his claim, the burden shifts to the nonmoving party to come forward with persuasive evidence that his claim is not "implausible." *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. The question then becomes, is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986). In evaluating the sufficiency of the nonmoving party's evidence, however, courts must still proceed very cautiously. If reasonable minds could differ as to the import of the evidence, and "[i]f ... there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *In re Japanese Elec. Prods. Antitrust Litigation*, 723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538; *see also Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2514 ("[n]either do we suggest that the trial courts should act other than with caution in granting summary judgment"). With these considerations in mind, we turn to the § 1983 claims raised by the plaintiffs and the evidence presented in support of each claim.

## A. DUE PROCESS CLAIMS

### 1. Procedural Due Process Claim

■ Before addressing appellants' substantive due process claim, we first briefly consider appellants' procedural due process claim. In order to establish a procedural

due process violation, a plaintiff must prove that he or she was deprived of " 'an *opportunity* ... granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis added) (citations omitted). As the district court noted, the Bradys could have sought meaningful review of the CPZC's decisions within the state judicial system, but chose instead to commence the present action. The district court held that "[t]he availability of such recourse, as a matter of law, precludes finding that the defendants' conduct violated plaintiffs' rights to procedural due process under the fourteenth amendment." On the facts of this case, we do not disagree. *See Cohen v. City of Philadelphia*, 736 F.2d 81, 85–86 (3d Cir.), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); *Creative Env'ts. Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982); *see also Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981) (deprivations of property attributable to unauthorized conduct of state officials do not violate due process clause if state law provides adequate post-deprivation remedy). Here, the Bradys could have availed themselves of a state forum to review the constitutionality of the defendants' actions, but chose not to do so. Hence, we conclude that appellants' procedural due process claim is without merit.

### 2. Substantive Due Process Claim

#### a. *Deprivation of a Protected Property Right*

■ Before addressing the merits of appellants' substantive due process claim, we must first determine whether the property rights which the Bradys assert they were deprived of could have constituted protected "property interests" within the meaning of the fourteenth amendment.

In the context of a zoning dispute, to state a claim under the fourteenth amendment for deprivation of "property" without due process of law a person must establish

that he had a valid "property interest" in some benefit that was protectible under the fourteenth amendment at the time he was deprived of the benefit. *See Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *G.T. Scott v. Greenville County*, 716 F.2d 1409, 1418 (4th Cir.1983) ("The starting point for our inquiry is to determine whether ... [appellant had] a 'protectible property interest in the permit' sufficient to trigger federal due process guarantees." (citation omitted)). As the Supreme Court noted in *Board of Regents v. Roth*, however, "[p]roperty interests ... are not created by the Constitution." To determine whether a property interest in some benefit rises to the level of a right protectible under the fourteenth amendment, courts therefore must look to "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709.

In their complaint, the Bradys claimed that under Connecticut state law, they had a protected property interest in 1) the building permit which was revoked, 2) a certificate of occupancy for the building at 14 Norwich Avenue, and 3) the general commercial use of their property. The district court, however, found that the Bradys had failed to demonstrate that they were entitled to either the building permit, the certificate of occupancy, or the general commercial use of their property under Connecticut state law.

Under Connecticut law, a person does not have a vested property right in a specific building permit until the building or renovations are substantially completed and the construction is in compliance with the issued permit. *See Marmah, Inc. v. Greenwich*, 176 Conn. 116, 121, 405 A.2d 63 (1978); *Graham Corp. v. Board of Zoning Appeals*, 140 Conn. 1, 4–5, 97 A.2d 564 (1953). Relying on these Connecticut cases, the district judge rejected appellants' contention that they had a protectible property right in the initial building permit that was revoked because: (1) the court found

that they had not alleged in their complaint that the work authorized under the first building permit was substantially completed at the time of revocation, and (2) because the court also found that the work completed would not have been in compliance with certain relevant regulations. The district court rejected appellants' claim of entitlement to a certificate of occupancy, holding that because there had been a "change in use" of the property from residential to commercial, no such entitlement existed under Connecticut state law until the Bradys first obtained a zoning permit and approval of a site plan from the CPZC. Finally, the district judge held that the Bradys had no protected entitlement to the commercial use of their property because he accepted the defendants' contention that the subject property was zoned exclusively for residential use during the fall of 1983. Thus, not only did the judge reject appellants' claim to a *right* in the general commercial use of their property, but he fully subscribed to the view that such use would have been "unlawful" under existing town zoning regulations. Further, the district judge dismissed the plaintiffs' substantive and procedural due process claims on the ground that the plaintiffs had no cognizable property rights under the fourteenth amendment.

Notwithstanding the district court's careful attempts to canvass and apply the relevant principles of Connecticut state and local law, we believe that the district court erred in granting the defendants' motion for summary judgment and dismissing the plaintiffs' complaint on the grounds that appellants had no cognizable fourteenth amendment property rights. After reviewing the record evidence, we believe that the district court erred in accepting the appellees' blanket assertion that the Bradys' property was residentially zoned during the period in question. Because there is sufficient evidence to permit a finding that the property was zoned and used *commercially* at the time this dispute arose, rather than residentially, we conclude that appellants *may* have had protectible fourteenth amendment property rights in the commer-

cial use and renovation of their property, and that a jury also could reasonably find that appellants had been deprived of those rights in violation of the fourteenth amendment.

The crucial issues in this case are whether the property was zoned for residential or commercial use, and whether there was a "change in use" of the property from residential to commercial. According to appellees, under town zoning regulations the alleged "change in use" from residential to commercial triggered all of the subsequent events of which the plaintiffs complained: the revocation of Wesley Brady's first building permit, the demand that the plaintiffs submit site plans to the CPZC, the demand that the plaintiffs obtain a zoning permit to use the property commercially, and the demand that the plaintiffs comply with assorted local zoning regulations. However, if the property at 14 Norwich Avenue was already zoned and used for commercial purposes in September 1983, when all of these demands were made, then the CPZC may have had *no authority* to declare that there had been a "change in use" of the property and to engage in the subsequent course of conduct that is the subject of the Bradys' challenge in this action.

In *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir.1985), which also involved a Connecticut zoning dispute, we stated that "the question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate [for fourteenth amendment purposes] should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Id.* at 59. Applying the *Yale Auto Parts* test, we believe that if in fact the property was zoned and used commercially, appellants very likely would have been entitled to the benefit of the commercial use of their property *but for* the alleged improper conduct of the appellees. If appellants' property was not in fact undergoing a change in use by virtue of their decision to rent space to the Borough, then the appellees may very well have had no discretionary authority under Connecticut state law to interfere with the appellants' efforts to lease the premises to the Borough or prevent work thereon, and to force them to apply for various permits and certificates. *See Sullivan v. Town of Salem*, 805 F.2d 81, 85 (2d Cir.1986) (if property complied with applicable state and municipal requirements, then "there was no element of discretion or judgment remaining for the building Official to exercise" in determining whether to grant benefit requested); *see also Bello v. Walker*, 840 F.2d 1124, 1129–30 (3d Cir.) (court reversed a grant of summary judgment rendered in favor of a municipal zoning board, where the plaintiff presented sufficient evidence to demonstrate that the municipal council's denial of a building permit was motivated by purely personal and political reasons), *certs. denied*, ——— U.S. ———, 109 S.Ct. 134, 102 L.Ed.2d 107, ——— U.S. ———, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). Because we believe that there is a genuine issue of material fact as to how the property was zoned and used during the period in question, and, consequently, as to whether the CPZC improperly determined that there was a "change in use" of the property and subjected the appellants to the various approval processes solely for the purpose of preventing the Borough of Colchester from occupying the first floor of the Brady building, we conclude that the district court erred in granting summary judgment in favor of the defendants on the ground that the plaintiffs had no protectible property interests under the fourteenth amendment.

Before we address the evidence regarding the zoning of the property, we first note that neither the appellees nor the appellants have come forward with clear-cut documentary evidence which conclusively establishes how the property was zoned in 1983. Still, both sides vigorously disagree on the answer to this arguably simple question. While it is true that appellees submitted a town zoning map upon the district court's request, the appellees did not indicate the location of the subject property on the map. Nor is the location of the property readily apparent, given that Norwich

Avenue spans a significant portion of the proffered map. One can only wonder why, in this modern day and age, it was so difficult for either party—*particularly* the Town of Colchester itself—to ascertain the zoning of this particular piece of property, and to so enlighten the court. We are left to decide whether the district court drew the proper inferences from the record evidence with respect to the zoning of the property in granting appellees' motion for summary judgment.

After examining the evidence, we believe that there is sufficient evidence to permit a finding that the subject property was zoned for commercial use rather than for residential use in September 1983, when the present dispute arose. Despite the district court's conclusory finding that the property at 14 Norwich Avenue was zoned "residential" at the time of purchase, the following assertions suggest (1) that the property was zoned *commercial* in September 1983, when the CPZC issued its cease and desist order; and (2) that the property was actually used for commercial purposes prior to its purchase.[5] To begin with, the Bradys allege in paragraph 14 of their complaint that: "On July 13, 1983, the plaintiff Wesley R. Brady purchased a *commercial building* located at 14 Norwich Avenue in the Town of Colchester. This building had at one time been residential, but for a long time prior to its purchase had been devoted to *commercial use*." Complaint ¶ 14 (emphasis added). Appellees argue on appeal that the appellants should not be allowed to contest the district court's finding with respect to the zoning of the property because they did not specifically allege in their complaint that the property was *zoned* "commercial" when they bought it. These contentions are without merit. Although the appellants did not specifically allege that

the property was "zoned" commercially when they purchased it, we believe that the above allegations regarding the longstanding "commercial use" of the property were sufficient to put the zoning of the building into issue. Moreover, in their moving papers, the appellees themselves discussed the zoning of the subject property, and the district court thereafter requested that the Town of Colchester submit a copy of its zoning map and zoning regulations to the court, both of which are now part of the record.

Next, a review of the Colchester Zoning Map submitted by appellees reveals that the property appears to be located in a section of the town which was zoned for commercial use in 1983. In the Warranty Deed conveying the subject property, the building is described as being located on the "southerly side of Norwich Avenue." A review of the Colchester Zoning Map indicates that nearly half of the southern side of Norwich Avenue is zoned for "General Commercial" use and at least another fifteen percent of the avenue is zoned for "Industrial" use. Only about a third of the avenue is zoned for "Urban Residential" use, and that portion is located the farthest from the center of town. The portion of Norwich Avenue that is zoned for commercial use is the portion *closest* to the center of town. Given that the Borough of Colchester's asserted reason for moving to 14 Norwich Avenue was the building's proximity to the Town Hall and other municipal offices in the town, it seems at least probable that the Brady building was located in the commercially zoned section of Norwich Avenue, closest to the center of town. Further, it is undisputed that the subject building is located next to the Glastonbury Bank and Trust Company; this fact lends

---

**5.** We are aware that questions as to how the Norwich Avenue property was actually "used" raise different but equally important issues than those raised by questions as to how the property was zoned. As we understand it, even if the property at 14 Norwich Avenue *was* zoned for commercial use, the property might still have been *used* only for residential purposes. And if the Bradys or their predecessors had only been using the property residentially at the time they

sought to lease the first floor to the Borough, the mere change in the "use" of the property from residential to commercial might have necessitated a new certificate of occupancy, which they might not necessarily have been entitled to as a matter of right. Thus, any potential property rights only vested if the property was both zoned and used commercially prior to this dispute.

support to the inference that the property was situated in a commercial district.

Finally, the fact that Brady purchased the building from a commercial entity, the Connecticut Realty Associates, and not from a residential owner, coupled with the fact that Wesley Brady testified at his deposition that Colchester Realty had had its office in the building from 1978 until 1983, when he purchased the property from the agency, lends support to the inference that it was zoned and used as a commercial property at the time the Bradys bought it.[6] Although the appellees have come forward with some evidence to suggest otherwise—namely appellee Barnecki's statement in a deposition that he personally believed the property to have been zoned for residential use and to have been empty for over a year prior to the Bradys' purchase of it—we nevertheless believe that the foregoing record evidence is sufficient to permit a finding supporting appellants' contention that the property was zoned and used commercially prior to their acquisition of it, and, consequently, that it may not have been zoned or used residentially as the appellees claim.

Since there *is* a genuine issue of material fact as to whether the CPZC improperly determined that there was a "change in use" of the subject property, we conclude that the district court erred in finding that the plaintiffs had no cognizable fourteenth amendment property interest in the commercial use of their building and in granting summary judgment in favor of appellees on that ground. In our view, the appellants did present evidence in support of their claim regarding the property's commercial zoning and use sufficient to permit a finding of a legitimate claim of entitlement to such use under state law. Although there was other evidence which contradicted appellants' claims, the district court was bound to draw all inferences in

favor of the nonmoving party in considering whether to grant summary judgment. Since we believe that there was sufficient evidence in the record to permit the inference to be drawn that the property was zoned and used commercially at the time of purchase, we conclude that the Bradys did present sufficient evidence of a vested property interest in the commercial use of their property to withstand the defendants' motion for summary judgment.

### b. *Arbitrary and Capricious Deprivation of Property*

■ The same evidence which supports a finding that the appellants had a protected property interest in the commercial use of their property also supports appellants' substantive due process claims. In zoning dispute cases, the principle of substantive due process assures property owners of the right to be free from arbitrary or irrational zoning actions. *See Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Burrell v. City of Kankakee*, 815 F.2d 1127 (7th Cir.1987); *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir.1983); *Scudder v. Town of Greendale*, 704 F.2d 999, 1002 (7th Cir.1983); *South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974); *Hope Baptist Church v. City of Bellefontaine Neighbors*, 655 F.Supp. 1216, 1218 (E.D. Mo.1987). In assessing appellants' claims, we are mindful of the general proscription that "federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations." *Town of Salem*, 805 F.2d at 82. Nevertheless, "when a landowner's constitutional rights are infringed by local zoning actions, our duty to protect the constitutional interest is clear." *Id.* Herein, if the defendants had no authority under state law to revoke appellants' building permit, to demand that

---

6. Brady also made an abortive attempt to submit evidence to the district court to support his claim that the subject property had been used commercially right up to the time he purchased it. Brady offered a photocopy of an affidavit submitted in 1983 in the state court proceedings in which the affiant stated that he had visited the premises at 14 Norwich Avenue prior to 1983 and that the building had housed business offices for several years. The district court, however, excluded the proffered affidavit, although the court's reasons for doing so are obscure.

Brady apply for zoning permits and certificates of occupancy, and to subject him to the overall approval process, then a trier of fact could conclude that there was no "rational basis" for the CPZC's actions, and that, as a result, the CPZC violated appellants' rights to substantive due process. *See Shelton v. City of College Station*, 780 F.2d 475, 484 (5th Cir.) (en banc) ("federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for 'irrationality or arbitrariness,' is proper only if the governmental body could have had no legitimate reason for its decision"), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986).

Of course, we do not suggest, and our prior opinions do not hold, that a wronged party has a valid claim for a constitutional deprivation every time a local zoning board makes an incorrect decision regarding a zoning permit. Yet, the facts of this case suggest that the plaintiffs may be able to prove that they were denied a permit and use of their property not because of a good faith mistake on the part of the CPZC about the applicable law, but because of indefensible reasons such as impermissible political animus. Accordingly, we reverse the district court's decision with respect to the plaintiffs' substantive due process claim, and remand for further proceedings.

## B. EQUAL PROTECTION CLAIM

■ As the district court correctly noted, the equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). To state an equal protection claim, a plaintiff must charge a governmental officer "not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation." *Burt v. City of New York*, 156 F.2d 791, 792 (2d Cir.1946). The district court found that, while appellants had adequately stated an equal protection claim, they failed to identify any evidence in the record to support the claim.

Appellants dispute this conclusion and point to evidence in the record in support of their claims of selective enforcement of the zoning laws against them. Apart from the evidence already discussed herein, the appellants also point to the specific sequence of events leading to the challenged decision, to the CPZC's allegedly substantial departure from normal practices, and to the historical background of the decision itself. *See Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977).

Appellants pointedly observe that the first Barnecki letter came the *day after* the Borough signed the lease with Brady. Further, appellee Barnecki stated in his deposition that (1) in reference to CPZC Chairman Adams' request that he send the September 20, 1983 letter to Brady, "I never received a call from the [CPZC] previously in any type of matter in that respect"; (2) he was under unusual pressure from the CPZC; (3) the CPZC was exerting pressure by "insisting" that Brady provide paved parking for the building when such spaces were not "necessary"; (4) he had never previously sent out a letter of that kind; (5) Brady was being treated differently than other property owners in Colchester; and (6) the events took place "in a highly close political atmosphere" with "Democrats fighting Republicans, the Borough fighting against the Town" and that he "didn't want any part of it." In addition, CPZC Member Skawinski stated during a meeting that she would have approved Brady's site plan if he were not renting to the Borough. Finally, appellants identified other parcels of commercial real estate that they contended received certificates of occupancy without meeting the standards imposed on them.

In response, appellees insist that all of these statements and events are susceptible of differing interpretations, and that together they do not constitute sufficient evidence to prove appellants' claims. Specifically, appellees claim that their unusual treatment of Brady was occasioned by Brady's own allegedly unusual step of moving

the Borough into the building without a certificate of occupancy.

Nevertheless, on a summary judgment motion all ambiguities and inferences to be drawn from the underlying facts should be resolved in the light most favorable to the nonmoving party. Applying this standard to the facts presented, we believe that the evidence adduced by appellants of discriminatory intent and selective and improper enforcement is sufficient to withstand a motion for summary judgment. We find this to be particularly so in light of the record evidence which suggests that appellants' property might have been zoned for commercial use all along, in which case appellees' actions may have been wholly unwarranted under the law. Thus, appellees have failed to meet their burden of establishing that there is no genuine issue of material fact to be submitted to the trier of fact with respect to appellants' equal protection claim.

## C. FIRST AMENDMENT CLAIM

■ The appellants claimed in the district court that the appellees' actions were taken in political retaliation for their leasing the property to the Borough, and that such actions violated their first amendment rights. To properly plead such a claim, appellants initially had to show that their conduct was protected by the first amendment and, next, that such conduct prompted the appellees' retaliatory action. *Mount Healthy v. Doyle*, 429 U.S. at 287, 97 S.Ct. at 576. The district judge found that appellants failed to allege facts which established that they had engaged in protected speech because he found that their act of renting the property to the Borough was not protected speech under the first amendment. Appellants claim on appeal that the district court misconstrued the nature of their claim. Rather than claiming that their right to rent to the Borough was protected by the first amendment, they assert they were claiming that their right of freedom of association with the Borough was protected by the first amendment.

We believe the district court was correct in finding that appellants' conduct was not protected as a first amendment right of freedom of association. The Supreme Court has recognized a freedom to associate with others "to pursue goals independently protected by the first amendment— such as political advocacy, litigation ... or religious worship." L. Tribe, American Constitutional Law 702 (1978). Appellants do not allege in their complaint that they rented their property to pursue political or other goals independently protected by the first amendment. Rather, as Wesley Brady has acknowledged, they rented their building to the Borough for purely commercial reasons. Therefore, since appellants failed to state a cognizable first amendment claim, we conclude that the district court was correct in granting summary judgment with respect to this claim.

## D. APPELLEES' QUALIFIED IMMUNITY DEFENSE

■ The appellees assert that even if we find that there is a question of material fact as to whether appellants constitutional rights were violated, they are entitled to qualified immunity because appellants' asserted rights were not "clearly established" at the time of the alleged violation. *See Hawkins v. Steingut*, 829 F.2d 317, 322 (2d Cir.1987). This contention, however, is without merit. As the Seventh Circuit in *Scudder v. Town of Greendale* noted in April of 1983: "It is well settled that enforcement of an otherwise valid zoning ordinance violates the Constitution ... if ... the decision of the particular zoning body is arbitrary, ... or if the ordinance is applied or enforced with a discriminatory intent or purpose." 704 F.2d at 1002 (citations omitted). We conclude that the appellees are not entitled to claim the defense of qualified immunity in the event that they are found to have violated the appellants' fourteenth amendment rights.

## CONCLUSION

For the reasons stated above, the district court's decision granting summary judgment with respect to appellants' substantive due process and equal protection claims is reversed, and we remand the case

for further proceedings consistent with this opinion. The grant of summary judgment with respect to appellants' procedural due process and first amendment claims, however, is affirmed. We have considered all of appellees' other arguments and we find them to be without merit.