**PAINE WEBBER REAL ESTATE SECURITIES, INC., Plaintiff,**

v.

**D.G. MEYER & CO., and Donald G. Meyer, Defendants.**

No. 92 Civ. 32 (KMW).

United States District Court, S.D. New York.

April 12, 1993.

Joseph D'Elia, Huntington, NY, for plaintiff.

Thomas T. McVann, Jr., Westhampton Beach, NY, for defendants.

MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Defendants move to dismiss, or in the alternative for summary judgment, in this action arising out of a May 1985 overpayment by plaintiffs' clearing agent to defendant. Because the statute of limitations has run on any meritorious action arising out of that event, I grant defendants' motion for summary judgment and dismiss the complaint.

## BACKGROUND [1]

On May 22, 1985, D.G. Meyer & Co., Inc. ("DG Meyer") sold to Paine Webber Real Estate Securities ("PWRES") a Federal Home Loan Mortgage Corporation bond for an agreed upon price of $7,680,155.53. Following their regular practice, the two companies produced printed confirmations of the trade and mailed them to each other. *See* Defendants' Notice of Motion, Exhibits H and J. Both printed confirmations correctly reported the net amount of money owed on the trade. As was the practice in the industry, however, instead of PWRES paying the purchase price directly to DG Meyer, both parties mailed their confirmations of the trade to their clearing agents, U.S. Trust Co. ("UST") and Security Pacific Clearing Corp. ("SecPac"), respectively. The seller's clearing agent, SecPac, then produced a delivery ticket, which it sent to UST on the settlement date. Although neither party could produce the original SecPac delivery ticket, a duplicate ticket, which may or not be the one received by UST,[2] erroneously reported the amount to be paid to DG Meyer as $8,738,-621.01 (the current balance of the bond), instead of the correct $7,680,155.53 figure (the net money owed). *See* Defendant's Notice of Motion, Exhibit I. Regardless of this error, according to the uncontested affidavit of defendants' expert in this field, UST should not have paid any money in reliance on SecPac's ticket; "[i]n generating a 'receive ticket' U.S. Trust could act only upon the copy of the trade confirmation supplied by its own customer, PaineWebber." Affida-vit of Peter B. Patterson ¶ 10. As the affiant explained, "[t]his arms-length relationship between clearing banks is one of the key reasons that dealers, at that time (1985) engaged clearing banks to settle their trades." *Id.* ¶ 14.

In any event, UST did, in fact, pay SecPac $8,738,621.01, although it is unclear whether it did so based on SecPac's delivery ticket or by making the same mistake on its own receive ticket. It did not at that time, however, debit PWRES's account for that amount, but instead only for the agreed upon $7,680,155.53 purchase price. Without informing plaintiff, defendant, or SecPac, UST then made an "internal book entry" adjustment, recording the additional debit to PWRES's account. By then charging PWRES only for the correct amount, and not informing them of the overpayment, UST made it difficult for PWRES to discover the overpayment.

When DG Meyer received its daily activity statement from SecPac, it did discover the million dollar overpayment. DG Meyer then called PWRES to find out whether it had a shortage, but PWRES insisted that its books were in balance. PWRES's reply left DG Meyer with no immediate way of discovering who had overpaid, because either of the clearing agents could have wrongly debited any one of their hundreds of accounts. On advice of its auditors, and in accordance with New Jersey's lost property law, DG Meyer segregated the $1,058,465 in a separate "due to customers" account. It listed the account in its 1985 financial statement, Notice of Motion, Exhibit L, which was mailed to PWRES, among others. Defendants also assert that DG Meyer sent an additional notification of the shortage to both SecPac and PWRES in February 1986, and attached UPS receipts for that day as Exhibits M and N to its Notice of Motion. Plaintiff's affiant alleges that he searched for that notice in plaintiff's file and could not find it; "we cannot verify, just as defendants cannot, the contents of the item delivered in exchange

---

1. Because this is a summary judgment motion, except where otherwise indicated, the factual background includes only undisputed facts.

2. Plaintiff's counsel asserts that UST did, in fact, receive that ticket and rely on it in issuing payment to SecPac. Affidavit in Opposition at 3.

for the said Acknowledgement, or say in fact if anything was delivered." Affidavit of William P. Urig at 2. Plaintiff nowhere alleges, however, that defendant did not notify it of the overpayment or that the UPS receipt referred to some other item.

DG Meyer maintained the segregated account until its liquidation in August 1987. During the liquidation proceedings, it advised all trading partners to check their records from trades with DG Meyer, and to contact them if they found any discrepancies. DG Meyer received no response. Consequently, upon liquidation, DG Meyer distributed the money to its shareholders. Three and one-half years later, in June 1991, after reviewing plaintiff's account, UST finally charged plaintiff for the 1985 million dollar overpayment. Plaintiff soon entered into a settlement with UST, by which plaintiff was charged with that overpayment.

Plaintiff then commenced this action, on January 3, 1992, alleging causes of action for indemnification, fraud, fraudulent conveyance, constructive trust, conversion, unjust enrichment, breach of fiduciary duty, and money had and received. Defendant moved to dismiss, or in the alternative for summary judgment, arguing that applicable statutes of limitations bar the various claims, that plaintiff alleged no facts on which plaintiff could hold Donald G. Meyer liable in his individual capacity, and that plaintiff had failed to allege fraud or mistake with sufficient particularity. Plaintiff subsequently filed a cross-motion for discovery of the names and addresses of DG Meyer's shareholders and to amend the complaint to name those shareholders and SecPac as defendants.

## DISCUSSION

### A. *Standards Governing Motions for Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Citizens Bank of Clearwater v. Hunt,*

927 F.2d 707, 710 (2d Cir.1991). When deciding a motion for summary judgment, a court must " 'resolve all ambiguities and inferences ... in the light most favorable to the party opposing the motion.' " *Shockley v. Vermont State Colleges,* 793 F.2d 478, 481 (2d Cir.1986) (citations omitted).

The moving party bears the initial burden of demonstrating that there exists no material issue of fact and that he or she is entitled to judgment as a matter of law. *See Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (citations omitted). The movant may carry her burden by demonstrating the absence of evidence to support the non-movant's claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Motions for summary judgment must be denied if reasonable minds could differ as to the importance of the evidence and if " 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn....' " *Brady v. Town of Colchester,* 863 F.2d at 210. However, when the moving party has met its burden under Rule 56(c) of the Federal Rules of Civil Procedure, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and if no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### B. *Applied to This Case*

In this case, defendants supported their motion with detailed affidavits from four participants in the events in question and two experts in this area and with documents substantiating their defense. Plaintiff, in contrast, chose essentially to rest on its pleadings, submitting only an affidavit of counsel and a two page affidavit from an officer of PWRES, which fails to contradict most of defendants' assertions. After reviewing all of the submissions, I conclude that the rele-

vant statutes of limitations bar all of the actions other than that for indemnification, and that I must dismiss the indemnification claim, because plaintiff fails to provide any evidence for its assertion that fraud and mistake impose an indemnification duty upon defendants.

██ In response to defendants' motion, plaintiff offers three arguments to support its action's timeliness. First, it recasts its claim as one for mutual mistake and asserts that I should apply the federal limitations period, which recognizes equitable tolling until discovery, and not the New York statute of limitations, CPLR § 213(6), which bars claims more than six years after the mistake occurred. This argument fails regardless of which rule I apply because plaintiff has failed to demonstrate that any mistake that caused its loss was mutual with defendants or that defendants fraudulently induced plaintiff's unilateral mistake. *See Surlak v. Surlak*, 95 A.D.2d 371, 466 N.Y.S.2d 461, 470 (1983) (mistake is available only when inaccuracy is due to mutual mistake or fraudulently induced unilateral mistake). Defendants provided the court with evidence that DG Meyer sent a correct confirmation to plaintiff and to its clearing agent. It also provided evidence that even if its clearing agent provided plaintiff's clearing agent with incorrect information, industry practice precluded plaintiff's clearing agent from relying on that information, and instead required plaintiff's clearing agent to rely only on information provided by plaintiff. Furthermore, defendant demonstrated that it immediately discovered the overpayment, contacted plaintiff about it on more than one occasion, and maintained the money in a segregated account until its liquidation. Plaintiff has not provided the court with evidence to contradict any of these facts.[3] Consequently, any mistake that was made was made either by plaintiff or by its clearing agent, not by defendant. Plaintiff has no evidence by which to prove its mistake claim, and thus recasting its action as one for mutual mistake cannot save it from being time barred.

██ Plaintiff next argues that, even if New York law applies, CPLR § 206(a)(1) allows it to bring its claim. That provision provides that for actions where a demand is necessary to entitle a person to commence an action, "where a right grows out of the receipt or detention of money or property by a trustee, agent, attorney or other person acting in a fiduciary capacity," the limitations period does not commence until the claimant discovers the facts upon which the right depends. Plaintiff asserts that because its action is one for constructive trust, defendants stood in a fiduciary relationship to plaintiff, and consequently, that section 206(a)(1) applies. Plaintiff, however, has not provided the court with any case law supporting the view that a claimant may utilize this tolling provision against one who had no prior fiduciary relationship with the claimant and who has become a fiduciary only by way of the events giving rise to the cause of action. The plain language of the statute indicates that the person against whom the action lies must be a fiduciary prior to the events in question, who then receives or detains money. In this case, defendants were not trustees who detained money, but rather trading partners who allegedly became trustees because they received and detained money. Section 206(a)(1)'s plain language thus does not allow for its use in this action.

Further, an interpretation finding section 206(a)(1) inapplicable here comports with the general New York rule regarding the accrual of actions for constructive trusts: "[a]n action to impress a constructive trust is governed by the six-year Statute of Limitations period provided under CPLR 213(1) that 'commences to run upon the occurrence of the wrongful act giving rise to a duty of restitution and *not from the time the facts constituting the fraud are discovered.*'" *Mattera v. Mattera*, 125 A.D.2d 555, 509 N.Y.S.2d 831, 833 (1986), quoting *Boronow v. Boronow*, 111 A.D.2d 735, 490 N.Y.S.2d 230, 232 (1985), *aff'd* 71 N.Y.2d 284, 525 N.Y.S.2d 179, 519 N.E.2d 1375 (1988) (emphasis add-

---

**3.** I note that plaintiff argues in its memorandum in opposition, at 9, that defendants' affiant, Steven DiPaola, attributed the overpayment to SecPac's error. Mr. DiPaola, in fact, never made that attribution but, instead, stated that "UST should have paid the money on the PWRES confirmation," DiPaola Affidavit ¶ 8, and attributed the error to UST, not to SecPac.

ed). Holding that the limitations period for actions against constructive trustees does not begin to commence until discovery of the facts on which the right depends would vitiate the above-stated rule, as it would mean that the limitations period would, in fact, commence to run from the time the facts constituting fraud are discovered. As such, I conclude that the action for constructive trust is time-barred.

■ Finally, plaintiff asserts that, regarding its claim for indemnification, the limitations period did not commence until the date it compensated UST for the overpayment, particularly because, it argues, fraud caused the loss. It is generally true that the limitations period for an indemnification claim does not commence until the party seeking indemnification has become liable for the amount for which it seeks to be indemnified. Summary judgment for defendants is nevertheless still warranted, because plaintiff has failed to demonstrate the existence of a material factual dispute as to whether plaintiff can support its claim for indemnification. Plaintiff bases that claim on the assertion that "plaintiff PWRES was liable to U.S. Trust in the amount of $1,058,465.48 solely by reason of the deceptive, misleading and inaccurate overcharge to U.S. Trust by and on behalf of D.G. MEYER & CO., INC., in the said amount, and by the active affirmative and intentional or wrongful malfeasance, non-feasance, fraud, deceit, mistake, wrongdoing, or misrepresentations of defendants without any act or omission or fault or culpable conduct on the part of PWRES contributing thereto." Complaint ¶ 25. As discussed above, defendants' moving papers demonstrate that any mistake that caused plaintiff's loss was made by plaintiff or plaintiff's agent UST, not by defendants. Plaintiff has not produced any evidence to counter these facts. Regarding plaintiff's fraud claim, plaintiff has not submitted any evidence rebutting defendants' showing that DG Meyer acted honestly and forthrightly at all times. In their moving papers, defendants demonstrated that they never made any misstatement to

plaintiff, and that industry practice did not allow UST to rely on the misstatement made by defendants' clearing agent, SecPac. In its opposition papers, plaintiff provided no evidence to contradict those assertions. In fact, plaintiff's counsel acknowledged that "the error that occurred here was not the fault of the two principals party hereto, Paine-Webber Real Estate Securities and D.G. Meyer & Co., Inc.," and called defendants "innocent parties." Affidavit in Opposition at 6–7. It is only in plaintiff's complaint and in its memorandum in opposition that it makes speculative claims regarding allegedly fraudulent acts by defendant, claims for which it provides neither documentary nor affidavit support. As such, I see no basis on which to find any fraud or mistake-based duty to indemnify plaintiff for its loss. I therefore grant summary judgment to defendants on the indemnification claim.

## CONCLUSION

For the reasons discussed above, summary judgment is hereby granted to defendants and the complaint is dismissed.[4]

SO ORDERED.

4. Because I grant defendants' motion and dismiss the complaint, and because plaintiff has provided no basis on which to hold liable SecPac or the other parties it wishes to add, I need not reach plaintiff's cross-motion for discovery and to amend the complaint to add additional parties.