Chief Judge Desmond.
The Village of Scarsdale, pursuant to statute (Village Law, § 179-k), has given its Planning Commission the authority to approve proposed plats for subdividing lands in the village. On this appeal the principal question of law, answered in the negative by the Appellate Division, is this: was it valid for the village to authorize its planning board to require, as a condition precedent to the approval of subdivision plats which show new streets or highways, that the subdivider allot some land within the subdivision for park purposes or, at the option of the village planning board, pay the village a fee in lieu of such allotment? Our answer is in the affirmative. We hold, first, that section 179-1 of the Village Law, empowering a village to require as to subdivision plats that there be set aside therein lands for parks, playgrounds or other recreational purposes, is valid and enforcible. Further, we hold that there is no constitutional or statutory ban against section 2, article 12, of the Bules and Regulations of the Planning Commission of defendant Village of Scarsdale as approved by the village trustees on September 24, 1957. These rules and regulations give the commission power to direct that, in lieu of such dedication of land, a charge or fee of $250 per lot be collected by the village “ and credited to a separate fund to be used for park, playground and recreational purposes in such manner as may be determined by the Village Board of Trustees from time to time. ’ ’
The facts of the particular controversy between plaintiff and the village are set out in full in the dissenting opinion and need not be repeated. We add some generally pertinent items. In at least five counties of this State there are cities, towns or villages which make it possible to insist on developers’ paying cash in lieu of setting aside areas in their developments for parks, playground and similar purposes (information supplied by the New York State Office for Local Government). In West-chester County alone 16 or more local governments (among them *83 several villages including Scarsdale) have '‘monies in lieu of land ” regulations (this data received from Westchester County Department of Planning). As we shall see later on when we cite recent cases from Wisconsin and Montana, such rules exist and are upheld by courts in other States. There is conflict between a 1956 opinion of the State Attorney-G-eneral that a city has no such power under section 33 of the General City Law, and three separate opinions of the State Comptroller dated in 1954, 1961 and 1963 (1954 Op. St. Comp. No. 6836; 17 Op. St. Comp., 1961, p. 79; 19 Op. St. Comp., 1963, p. 3) which state that towns and villages could exact such fees under section 277 of the Town Law and section 179-1 of the Village Law.
We find in section 179-1 of the Village Law a sufficient grant to villages of power to make such exactions. In specific terms the statute validates “ in proper cases ” requirements by village planning boards that a subdivision map, to obtain approval, must show “ a park or parks suitably located for. playground or other recreation purposes.” There is, to be sure, no such specificity as to a village rule setting up a “ money in lieu of land ” system. However, section 179-1 says that a village planning board, when the specific circumstances of a particular plat are such that park lands therein are not requisite, may “ waive ” provision therefor, “ subject to appropriate conditions and guarantees ”. We agree with the above-cited opinions of the State Comptroller that the phrase “ appropriate conditions and guarantees ” reasonably includes the kind of arrangement here made. That is, instead of alloting part of the subdivision itself for parks and play areas, the subdivider may be ordered to pay so much per lot into a separate village fund which is “to be used for park, playground and recreational purposes ”, in such manner as the village trustees may decide.
We turn our attention to the arguments advanced against the constitutionality of collecting such fees from developers. Plaintiff like the Appellate Division relies on Gulest Assoc. v. Town of Newburgh (25 Misc 2d 1004, affd. 15 A D 2d 815) which held invalid a 1959 amendment to section 277 of the Town Law. The amendment specifically authorized towns (there is in the Village Law no such specific authorization) to demand money payments instead of assignment of subdivision lands for recreational uses. The Special Term opinion in Gulest turns on what the court *84 thought was vagueness in the Town Law amendment at the point where it appeared to give a town planning board the privilege of using the money for “ any recreational purpose ’ Even if the Gulest decision were correct — and we hold it is not — it would not apply here since by the Scarsdale rules and regulations the moneys collected as “in lieu” fees are not only put into “ a separate fund to be used for park, playground and recreational purposes ” (there was no such reserve set up in Gulest) but, as provided by the board of trustees, expenditures from such fund are to be made only for ‘ ‘ acquisition and improvement of recreation and park lands ” in the village. There is nothing vague about that language.
Going beyond Gulest (supra), plaintiff (and amicus curiae) insist that what Scarsdale has imposed is an unconstitutional and unauthorized “ tax ” on plaintiff and others similarly situated, in that the payments are for general governmental purposes thus charged against subdivision developers. We think that this labeling distorts the purpose and meaning of the requirements. This is not a tax at all but a reasonable form of village planning for the general community good.
Scarsdale and other communities, observing that their vacant lands were being cut up into subdivision lots, and being alert to their responsibilities, saw to it, before it was too late, that the subdivisions make allowance for open park spaces therein. This was merely a kind of zoning, like set-back and side-yard regulations, minimum size of lots, etc., and akin also to other reasonable requirements for necessary sewers, water mains, lights, sidewalks, etc. If the developers did not provide for parks and playgrounds in their own tracts, the municipality would have to do it since it would now be required for the benefit of all the inhabitants.
But it was found, in some instances, that the separate subdivisions were too small to permit substantial park lands to be set off, yet the creation of such subdivisions, too, enlarged the demand for more recreational space in the community. In such cases it was just as reasonable to assess the subdividers an amount per lot to go into a fund for more park lands for the village or town. One arrangement is no more of a “tax” or ‘ ‘ illegal taking ’ ’ than the other.
*85 In 1965 (Jordan v. Mcnomonee Falls, 28 Wis. 2d 608) the Supreme Court of Wisconsin in a careful and convincing opinion' upheld as against assertions of unconstitutionality a village ordinance or statute which, for present purposes, is identical with the one we are considering. The Wisconsin court noted that municipal planners agree that to create a good environment for dwellings there must he a minimum devotion of land to park and school purposes. It was held in the Jordan case that it was not necessary to prove that the land required to he dedicated for a park or school site was to meet a need solely attributable to the influx into the community of people who would occupy this particular subdivision. The court concluded that “ a required dedication of land for school, park, or recreational sites as a condition for the approval of the subdivision plat should be upheld as a valid exercise of police power if the evidence reasonably establishes that the municipality will be required to provide more land for schools, parks, and playgrounds as a result of approval of the subdivision” (p. 618). As to the constitutionality of what was called an “ equalization fee provision” the court said that the same reasons justify with equal force the land dedication requirement and the provision for an equalization fee, and that the equalization fee was not a tax imposed on the land as such but was a fee imposed on the transaction of obtaining approval of the plat (p. 622). In 1964 the Montana Supreme Court in Billings Props. v. Yellowstone County (144 Mont. 25) passed on a State statute which required land to be dedicated for park and playground purposes as a condition precedent to approval of a subdivision plat and which statute authorized the county planning board to waive the requirement in appropriate cases. The Montana court remarked (p. 29) that: “ Statutes requiring dedication of park and playground land as a condition precedent to the approval of plats are in force in one form or another in most all states.” The court said this at page 33: “ Appellant does not deny the need for parks and playgrounds, however, it would require the city to purchase or condemn land for their establishment. But this court is of the opinion that if the subdivision creates the specific need for such parks and playgrounds, then it is not unreasonable to charge the subdivider with the burden of providing them.”
*86 Defendants make two other arguments against recovery hack by plaintiff of these fees. They point to the fact that plaintiff paid without protesting, and to plaintiff’s failure to comply with the time requirements of section 341-b of the Village Law for filing claims and bringing actions against villages. Since we are holding that the village acted within its rights in collecting these moneys from plaintiff, we need not consider these other points made by defendants.
The order appealed from should be reversed and defendants’ motion for summary judgment dismissing the complaint granted, with costs in this court and in the Appellate Division..