OPINION of the court
John Copertino, J.
This is an action based upon a claim and a counterclaim involving the sale of real property which was tried before this court without a jury.
In accordance with CPLR 4213 (subd [b]), the following constitutes the decision of the court.
Pursuant to an agreement between the parties, the following facts were submitted to this court by stipulation: Defendants were the owners of a parcel of land known as “Map of Bay Pasture” located in the Town of Huntington, Suffolk County, New York; on September 24, 1976, defendants entered into an agreement with respect to this land with the County of Suffolk, the county sewer agency and the county Department of Environmental Control which was duly recorded in the Suffolk County Clerk’s office under conveyances (Liber 8160, p 39); the agreement provided that the owner of said land, consisting of 14 building plots, was to pay to the county a specified sum for each lot, totaling $26,192, to be applied toward the ultimate construction, operation, or maintenance of a “sewerage dis *49 posal and collection system;” these sums were to be paid prior to the signing of the filed map for lots 6 and 14 and prior to the issuance of an S-9 or a certificate of occupancy for lots 2 through 5, both inclusive, and 7 through 13, both inclusive; on November 14,1980, defendants entered into a contract for the sale of Bay Pasture to Donald E. Marsh and Herbert L. Haas — the principal partners in the Bay Pasture Company, plaintiff herein — who assigned this contract to plaintiff; the contract of sale made no mention of the sewer agency agreement nor was mention made of said agreement by the defendants to the plaintiff or its principal partners; on December 15, 1980, a bargain and sale deed with convenants against grantor’s acts was duly delivered by the defendant to the Bay Pasture Company and thereafter recorded in the office of the County Clerk of the County of Suffolk on December 23, 1980; it should be noted here that at the time of purchase, the Chicago Title Insurance Company issued a policy of title insurance insuring the plaintiff’s title. This company has paid out a total sum of $20,236 to the county on a claim by its insured, the plaintiff herein. Pursuant lo the terms of this policy, the title company had the right to subrogation.
With respect to defendant’s counterclaim the parties further stipulated that contemporaneously with the conveyance of title, and on December 15, 1980, the plaintiff’s principal partners executed “a note and bond” [sic] by which they were obligated to pay defendants the sum of $80,000 with interest, $10,000 of which plaintiff concedes remains to be paid with interest from September 15,1981.
In addition to the facts stipulated to, there was testimony from two witnesses called by the plaintiff, which established the following relevant facts.
Mr. Donald E. Marsh testified that at the time of contract, there were discussions between himself, on the one part, and defendants, on the other, regarding plaintiff’s intentions with respect to the land. Marsh informed defendants that plaintiff intended to improve the land by building “one family houses” on each of the lots except lot 6 which was already improved. There were also discussions between the parties regarding the price for which plaintiff would be selling the new houses. However, it was only *50 when plaintiff applied for a certificate of occupancy for the dwelling on lot 2 that the sewer agency agreement came to plaintiff’s attention.
It is plaintiff’s contention that defendants encumbered the premises that they conveyed to plaintiff when they entered into the sewer agency agreement and that this was an act that the covenant in the deed protected against. Plaintiff urges upon the court that “the Sewer Agency agreement by its terms created a restrictive convenant running with the land * * * a burden on the land which was required to be paid by any owner who sought clean title.”
Defendants, however, argue that the sewer agency agreement “merely called for a deposit against a possible future levy.” Defendants contend that the obligation to pay this sum did not arise until applications were made for certificates of occupancy for dwellings on each of the lots. It follows, therefore, that should no certificate of occupancy ever have been sought, no money would have ever become due.
In examining the issues presented herein, it must be noted that the sewer agency agreement in question was entered into by authority of a resolution of the Suffolk County Sewer Agency and subdivision 5 of section 277 of the Town Law. The agency’s resolution provided for payments which “shall constitute a trust fund to be used exclusively for a future communal sewerage system“ (see Di Thomas v Levine Dev. Corp., 54 AD2d 554). The agreement — implementing the resolution — stated that these payments or donations were to be made “prior to the issuance of S-9 or Certificate of Occupancy” and that “neither the owner nor any successor to the owner shall request a Certificate of Occupancy, temporary or otherwise, of the local municipality, whether it be a Town or Village, nor shall the municipality issue such a certificate until after said donation shall have been made.” The agreement further provided that the required payment “is and is hereby intended to be an individual lien for the amount set against each lot until that particular amount is paid.” The question that this court must decide is at what point, if any, the required payment to the sewer agency *51 became a lien upon the land and whether this lien constituted an encumbrance in violation of defendants’ covenant against grantor’s acts.
A lien has been defined as a charge upon property for the payment or discharge of a debt or duty (35 NY Jur, Liens, § 1). It gives the lienor the right to have an owner’s debt satisfied out of the debtor’s property. Indeed, it is common for a statute, which authorizes the levy of a special assessment, to declare that such assessment constitutes a lien and charge upon the property assessed (55 NY Jur, Special Assessments, § 340). However, the levy of the assessment and the accrual of the liability to pay said assessment are not coextensive. Accordingly, the mere fact that an assessment has been made does not necessarily imply that there is a lien upon the property which has been assessed. In fact, with respect to assessments by towns for local improvements, section 6 of chapter 762 of the Laws of 1931 provides that the local assessment “shall become a lien at and from the time that the same becomes payable”. Similarly, it has been held that where local assessments are payable in installments, “each installment thereof becomes a lien only from the time the same became payable” (Volpe v Incognito, 23 Misc 2d 236, 239). In the Volpe case, the court held that the liability for the payment of an installment would fall upon the party having ownership of the property at the time the installment became due. This was so even though the assessment was made while title to the property was still in the prior owner.
Based upon this reasoning, it is this court’s opinion that at the time that title passed from the defendants to plaintiff there was no lien upon the conveyed premises. The obligation to pay the sums of money pursuant to the agreement did not arise until such time as there was an application for an S-9 or a certificate of occupancy with respect to all but two of the lots. At the time of conveyance, no such applications had been made. Therefore, the sums of money set forth in the agreement were not yet due and payable. It is conceivable that had the plots never been built upon, the sums provided for in the agreement never would have become payable.
*52 In so concluding, this court is of the opinion that the result reached herein is consistent with the intention of the Legislature in enacting section 277 of the Town Law and with the county resolution pursuant thereto.
The sewer agency agreement, as hereinabove stated, was made pursuant to the authority vested in the County of Suffolk by subdivision 5 of section 277 of the Town Law with respect to the approval of subdivision plats. As noted in Lechtenstein v Suffolk County Dept. of Environmental Control (87 Misc 2d 1014, 1016) “[t]he basic concept contained in subdivision 5 of section 277 of the Town Law is the requirement that a developer pay certain fees for necessary public improvements”. In fact, in Jenad, Inc. v Village of Scarsdale (18 NY2d 78), the Court of Appeals adopted a similar line of reasoning with respect to playgrounds when it stated (p 85) that “‘this court is of the opinion that if the subdivision creates the specific need for such parks and playgrounds, then it is not unreasonable to charge the subdivider with the burden of providing them.’ ” In the present case, inasmuch as there would have been no need for a sewer system unless and until there were structures built upon the plots, it is not unfair to require that the party who erects the structures, and presumably profits by their construction, pay the initial expenses for the sewer facilities.
Upon the court’s opinion that there was no lien in existence at the time that title passed, judgment must be for the defendants. While the deed from defendants by which title to Bay Pasture passed to plaintiff contained a covenant against grantor’s acts, the covenant was not violated by the agreement. “Since a covenant against encumbrances is regarded as related to things in existence at the time it is made, unless the tax or assessment is then an actual lien, the covenant is not broken” (13 NY Jur, Covenants and Restrictions, § 52; see, also, Hadley Realty Corp. v Lawyers Tit. Corp. of N. Y., 37 NYS2d 658).
Accordingly, judgment shall be for the defendants on plaintiff’s cause of action.. In addition, defendants are entitled to judgment on their counterclaim in the amount of $10,000 with interest from September 15, 1981.