■ 383 MADISON ASSOCIATES, Appellant, v CITY OF NEW YORK et al., Respondents. [598 NYS2d 180] —Order and judgment

(one paper), Supreme Court, New York County (Eugene Nardelli, J.), entered November 1, 1991, which, *inter alia,* declared the denial of plaintiff's application for a special permit was not improper as a matter of administrative or constitutional law, unanimously modified, on the law, to the extent of declaring that there is no rational basis for defendants' determinations that the disadvantages covered by reduced light and air would not be offset by the advantages of the preservation of Grand Central Terminal as a landmark, that plaintiff's proposal for the continuing maintenance of the Terminal would not result in its preservation, and that the proposed transfer of transferable development rights would unduly increase population density, and otherwise affirmed, without costs.

Plaintiff owns a building site in the vicinity of Grand Central Terminal, a designated landmark, and together with successors in interest of the Penn Central Corporation, applied to the City Planning Commission for a special permit allowing for the transfer of transferable development rights to be used to develop a 74-story building on plaintiff's site.

The application was rejected after a protracted process marked by numerous unjustified delays in violation of 6 NYCRR 617.8 requiring co-lead agencies to take appropriate action within 30 days, and that occasioned at least two proceedings by plaintiff to compel municipal agencies to act. In one such proceeding following a three-year delay, Supreme Court ordered the relevant City agencies to certify that plaintiff's draft environmental impact statement was complete. The application was finally rejected on various statutory and regulatory grounds, only some of which were valid. We modify the judgment to delete those paragraphs confirming determinations that have no rational basis in the record.

Because a pattern of common ownership that once joined this property and those intervening with the Terminal has been disrupted by sales of the parcel as well as the intervening lots by Penn Central and its successors in interest, the property is not a site "adjacent" to the landmarked Terminal within the meaning of part 74 of the New York City Zoning Resolution. Therefore, it is not includable within the class of properties eligible to receive transferable development rights, and plaintiff may not avail itself of the provisions of the "chain amendment" set forth in section 74-79 of the Zoning Resolution.

Even if plaintiff's property were adjacent to the Terminal, we would have rejected its reading of section 81-211 of the Zoning Resolution to the extent such would deprive the City of regulatory authority over the concentration of transferable development rights on a single site. This section is not inconsistent with the authority of the City's zoning agencies to evaluate development at any site in terms of standard zoning criteria (see, Matter of Cicenia v Zoning Bd. of Appeals, 157 AD2d 722, 725). Since the site is zoned for a floor area ratio of 15, but the proposed development would have required a floor area ratio in excess of 33, a rational basis exists for the determination that the concentration of these transferable development rights at this site would increase the bulk of the site out of proportion to the surrounding neighborhood.

However, we reject the City's contention that the proposed development would disproportionately impact on the access of surrounding sites to air and light. Comments by the City Planning Commission itself made in the late 1960's when the concept of the transferable development rights was being debated, which emphasized that the landmarked area would create a "saucer of light" that likely would offset a loss of light if the development rights were to be transferred, undermine the very findings presently made by that agency. Since transferable development rights originally were envisioned as a trade-off, shifting as-of-right development to adjacent sites, we find no basis to conclude that the facts of this case would have created a burden greater than that originally contemplated. We also reject the administrative determination that the increase of approximately 4,900 pedestrians, in a vicinity populated daily by some 700,000 workers, posed the threat of a disproportionate impact. Finally, the report of the Landmarks Preservation Commission failed to identify in concrete terms what additional reasonable steps would have been required for plaintiff, who is not a lessee of the Terminal and is not presently charged with a duty of maintenance, to ensure maintenance of this landmark. While the City may require applicants to assume maintenance responsibilities of landmarks as a condition of a special permit, it is not clear why the Landmarks Preservation Commission seemed determined to relieve the Metropolitan Transportation Authority, an independent third party, of its obligation as lessee of the Terminal to maintain the Terminal by reposing direct responsibility for such with plaintiff.

Finally, since plaintiff did not have a property right to the grant of a special permit, its constitutional claims must be

rejected *(see, Sudarsky v City of New York,* 779 F Supp 287, 297, *affd* 969 F2d 1041, *cert denied* — US —, 113 S Ct 1059). Concur—Rosenberger, J. P., Kupferman, Asch and Rubin, JJ.