**HBP ASSOCIATES, Plaintiff,**

v.

**Langdon MARSH, as Commissioner of NYS DEC, Jean–Ann McGrane, as Regional Director, Region III, New York State DEC, County of Orange and Orange County Sewer District No. 1, Defendants.**

No. 94 CV 8146 (BDP).

United States District Court,
S.D. New York.

July 21, 1995.

Ben Gailey, Jacobwitz & Gubits, Walden, NY, for plaintiff.

Thomas J. Cione, Orange County Dept. of Law, Goshen, NY, for defendant County of Orange.

Maria Semidei Otero, NYS Dept. of Law, New York City, for New York State and NYS Dept. of Environmental Conservation.

## MEMORANDUM DECISION

PARKER, District Judge.

### FACTS

This action seeking declaratory, injunctive and monetary relief for the violation of civil rights, pursuant to 42 U.S.C. § 1983, is before this Court on Defendants' motions to dismiss. The Defendants, County of Orange and Orange County Sewer District No. 1 ("the County") and Langdon Marsh and Jean–Ann McGrane ("the State"), move to dismiss pursuant to 12(b)(1) for lack of subject matter jurisdiction and pursuant to 12(b)(6) for failure to state a claim.

HBP owns a 6.8–acre parcel of land located in the Village of Harriman, County of Orange and within the boundaries of Sewer District No. 1 and Region III of the New York State Department of Environmental Conservation ("DEC"). HBP seeks to develop the land into a 15–lot single family detached residential subdivision. The County created and administers Sewer District No. 1, a special district vested with the authority and duty to treat and dispose of sanitary sewage and to approve individual sewer connections to the District's sewage facilities. The construction of the facilities was allegedly financed with sewer assessments levied and collected from benefitting properties, including HBP's subdivision.

HBP has obtained preliminary subdivision approval from the Village of Harriman Planning Board and all necessary County and State approvals for the development of its subdivision, except a DEC sewer main line extension permit ("main line extension per-

mit"). Although the County has approved HBP's sewer design, HBP was denied the main line extension permit because of a moratorium imposed by the DEC in 1986 (pursuant to special conditions of the State Pollutant Discharge and Elimination System ("SPDES") permit issued to the County for Sewer District No. 1) on sewer extensions, including main line extension permits. The moratorium states that it will remain in effect "until the Permittee [the County] can satisfactorily demonstrate to the Department [DEC] that adequate capacity exists in the plant to handle future growth." SPDES, p. 15. The moratorium has remained in effect for almost nine years because the County has not demonstrated excess capacity at the plant.

HBP alleges that without a main line extension permit, its proposed subdivision is completely denied access to the sewer services, depriving it of all reasonable use of its property. HBP also alleges that other property owners, who do not need approval of a new main line extension permit, have unlimited use of the sewage facilities.

HBP claims that the conduct of the Defendants violates its civil rights by unconstitutionally taking its property without just compensation, denying it equal protection of the law, and denying it due process of law, pursuant to the Fifth and Fourteenth Amendments. The County moves to dismiss the complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) this Court lacks subject matter jurisdiction, (2) principles of *res judicata* and collateral estoppel bar the action, and (3) HBP has failed to state a claim against it upon which relief can be granted. The State moves to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) the Eleventh Amendment bars HBP's claim against the State and (2) HBP has failed to state a claim against it upon which relief can be granted.

**DISCUSSION**

A. *Lack of Subject Matter Jurisdiction*

■ Citing *Siler v. Heckler,* 578 F.Supp. 744 (N.D.Ga.1983) and *Morabito v. Blum,* 528 F.Supp. 252 (S.D.N.Y.1981), the County argues that this Court lacks subject matter jurisdiction because HBP's constitutional claims against it are clearly frivolous. The County asserts that because the State denied approval of HBP's main line extension permit, HBP only has a state law claim against the State, and not the County, who has approved every permit that it has the power to approve.

■ Jurisdiction is not defeated, however, by the possibility that the allegations in the complaint might fail to state a claim. As the Supreme Court noted in *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), "it is well-settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."

Accordingly, courts have held that a constitutional claim must be wholly insubstantial before a federal court dismisses it for lack of jurisdiction. For example, in *Siler,* the Court held "[u]nless a constitutional claim is clearly immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous, a federal court should not dismiss it for lack of jurisdiction. Rather, the court should accept jurisdiction and then subject the claim to the tests required for a Rule 12(b)(6) motion or a motion for summary judgment under Rule 56." *Siler,* 578 F.Supp. at 747 (N.D.Ga.1983) (citations omitted). See also *Morabito,* 528 F.Supp. 252, 260 (S.D.N.Y.1981) ("[w]hile there is judicial authority for the proposition that dismissal for lack of subject matter jurisdiction is appropriate where the complaint fails to allege a substantial federal claim, it is well settled that such dismissals should be confined to cases where the complaint on its face, without resort to extraneous matter, is so plainly insubstantial as to be devoid of any merit, enabling the court to conclude that the claim asserted is patently frivolous or wholly insubstantial.").

Because, as set forth below in the Court's discussion of the Defendants' assertion that HBP has failed to state a claim, HBP's constitutional claim is not "wholly insubstantial," the Court declines to dismiss the complaint for lack of subject matter jurisdiction.

### B. *Res Judicata and Collateral Estoppel*

■ The County next argues that the rule of *res judicata* or principles of collateral estoppel bar this action. In an action commenced by HBP against the County, *Harriman Woods Associates v. County of Orange, Orange County Sewer District No. 1 and New York State Department of Environmental Conservation,* # 4903/89, the parties entered a court-ordered Settlement and Discontinuance. The County agreed that various sewer connection permits owned by HBP could be transferred to other property, subject to the receipt of other required approvals. The County asserts that this Settlement bars HBP's claims in this action. The County correctly cites *County of Lancaster v. Philadelphia,* 386 F.Supp. 934, 937 (E.D.Pa.1975), *Dells, Inc. v. Mundt,* 400 F.Supp. 1293, 1297 (S.D.N.Y.1975), and *Pyles v. Keane,* 418 F.Supp. 269, 273 (S.D.N.Y.1976), in support of its proposition that *res judicata* and collateral estoppel can be raised and considered via a pretrial motion to dismiss, but misunderstands the rule of *res judicata* and the doctrine of collateral estoppel as they apply to the *Harriman* Settlement and Discontinuance.

■ The rule of *res judicata* provides that "when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (citation omitted). "Thus, this doctrine applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) in a case involv-

ing the same cause of action. *Herendeen v. Champion International Corp.,* 525 F.2d 130, 133 (2d Cir.1975).

■ As a general rule, consent decrees are accorded *res judicata* effect. See *U.S. v. Southern Ute Tribe or Band of Indians,* 402 U.S. 159, 91 S.Ct. 1336, 28 L.Ed.2d 695 (1971); *Wallace Clark & Co., Inc. v. Acheson Industries, Inc.,* 532 F.2d 846 (2d Cir.), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). A consent decree that expressly reserves rights, however, does not have a preclusive effect. See *Martino v. McDonald's System, Inc.,* 598 F.2d 1079, 1083 (7th Cir.), *cert. denied,* 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979).

The *Harriman* Settlement and Discontinuance expressly states that "neither the defendants/respondents' obligations herein nor the plaintiff/petitioner's rights shall be abrogated or limited in the event that any application for approval is denied or not processed on the basis of any actual or alleged limitation of inadequacy of the sewerage facilities of OCSD No. 1," ¶ 2. Because HBP expressly reserved its rights if its application for any permit was denied, as it allegedly was on July 13, 1994, the *Harriman* Settlement and Discontinuance does not have a preclusive effect.

■ "Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); see also *Lipsky v. Commonwealth United Corporation,* 551 F.2d 887, 894 (2d Cir.1976) ("a prior judgment can only be introduced in a later trial for collateral estoppel purposes if the issues sought to be precluded were actually adjudicated in the prior trial"). Because the *Harriman* Settlement and Discontinuance did not address the constitutional claims involved in this case, collateral estoppel does not apply here to preclude their litigation.

### C. *The Eleventh Amendment*

The State argues that the Eleventh Amendment bars both monetary and equita-

ble claims against state officials when the state is the real, substantial party in interest. HBP concedes that the Eleventh Amendment bars actions for monetary damages against a state and its officers (when the decree would operate against the state). See *Pennhurst State School and Hospital v. Halderman ("Pennhurst II")*, 465 U.S. 89, 98–101, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984). Thus, the complaint is dismissed to the extent that it seeks monetary damages against the State.

 The remaining dispute revolves around the question of whether the Eleventh Amendment bars HBP's claims to prospective injunctive and declaratory relief against the State. In *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982), the Supreme Court announced a general rule that a suit against a state (or state officials that is in fact a suit against a State) is barred by the Eleventh Amendment regardless of whether it seeks damages or injunctive relief. The doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, carves out an exception to this general rule. Under *Ex Parte Young*, acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in federal court. See *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985); *Berman Enterprises, Inc. v. Jorling*, 3 F.3d 602, 606–07 (2d Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994).

To the extent, therefore, that HBP seeks declaratory and prospective injunctive relief against the State, its claims are not barred by the Eleventh Amendment.

### D. *Failure to State a Claim upon which Relief can be Granted*

### 1. *Legal Standard for a Motion to Dismiss*

 Because the purpose of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof, see *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980), a plaintiff need not come forward with proof of its allegations. A plaintiff must, however, allege facts that taken as true constitute a claim. "In considering Rule 12 motions to dismiss, the Court must accept the facts appearing on the face of the complaint as true, and consider them along with such reasonable inferences as may be drawn in complainant's favor." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Complaints relying on the Civil Rights Acts "are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

### 2. *Takings Claim*

 To establish a takings claim under 42 U.S.C. § 1983, HBP must show (1) a property interest; (2) that has been taken under the color of state law; (3) without just compensation. See *Port Chester Yacht Club v. Iasillo*, 614 F.Supp. 318, 321 (S.D.N.Y. 1985). In addition, in order for liability to attach to a municipality, such as the County, a plaintiff must show that it was an official policy or custom or practice that proximately caused the constitutional violation. See *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978); see also *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987) (finding municipal liability under § 1983 on the basis of a policy of deliberate indifference to the constitutional rights of persons within its domain).

 To fulfill the third requirement that the taking be "without just compensation," HBP must allege that it exhausted state procedures for obtaining just compensation. See *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985) ("if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been

denied just compensation"); *Villager Pond, Inc. v. Town of Darien, Darien Planning & Zoning Commission,* 56 F.3d 375 (2d Cir. 1995). New York has established a procedure for the pursuit of just compensation claims, EDPL § 101, et. seq., and that procedure fulfills all constitutional requirements. See *Kohlasch v. New York State Thruway Authority,* 482 F.Supp. 721 (S.D.N.Y.1980). Because HBP has failed to allege that it sought and was denied just compensation from the defendants under New York State law, nor shown that New York's "inverse condemnation procedure is unavailable or inadequate," *Williamson,* 473 U.S. at 196–97, 105 S.Ct. at 3122, its claim for the taking of property without just compensation is premature. See, e.g., *Krmencik v. Town of Plattekill,* 1989 WL 114307, *2 (N.D.N.Y. 1989). Accordingly, the defendants' motions to dismiss are granted as to HBP's Fifth Amendment takings claim.

### 3. *Substantive Due Process Claim*

 To state a claim under the Fourteenth Amendment for deprivation of "property" without due process of law a person must establish that he had a valid "property interest" in some benefit that was entitled to constitutional protection at the time he was deprived of that benefit. See *Brady v. Town of Colchester,* 863 F.2d 205, 211–12 (2d Cir. 1988). State law creates and defines the parameters of a plaintiff's property interest for the purposes of an action under § 1983.

See *Paul v. Davis,* 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

 Citing *Sudarsky v. City of New York,* 779 F.Supp. 287 (S.D.N.Y.1991), *aff'd,* 969 F.2d 1041 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1059, 122 L.Ed.2d 365, and *Eastbrook Construction Co. v. Armstrong,* 205 A.D.2d 971, 613 N.Y.S.2d 776 (3d Dep't.1994), the State argues that the issuance or denial of a discretionary permit does not create a property interest protected by the Fourteenth Amendment. Although in both cases the Courts found that, because the issuance of the permit was discretionary, the plaintiff did not have a property interest,[1] neither *Sudarsky* nor *Eastbrook* involved the denial of a benefit from a special assessment that was levied against the plaintiff, as in this case.

Here, HBP premises its constitutional claim against the Defendants on the proposition that it was unconstitutionally deprived of property because the Defendants denied it access to the benefit of a sewage facility for which it has paid a special assessment. Courts have held that although money "raised by general taxation may constitutionally be applied to purposes from which the individual taxed may receive no benefit, and indeed, suffer serious detriment, so-called assessments for public improvements laid upon

---

1. In *Sudarsky,* the plaintiffs claimed that the defendant City had delayed the issuance of a building permit until such time as the area, including the site for the plaintiffs' building, had been down-zoned so as to make plaintiffs' proposed development illegal. Under New York law, an owner is permitted to complete a development rendered nonconforming by the passage of a more restrictive zoning ordinance if the owner has undertaken substantial construction and made substantial expenditures prior to the effective date of the new ordinance. The Court held that because the timing of the down-zoning was within the discretion of the defendant City, the plaintiffs could not establish the existence of a constitutionally protected property interest based on this New York law. See *Sudarsky,* 779 F.Supp. at 295 (quoting *Ellington Construction Corp. v. Zoning Board of Appeals of the Village of New Hempstead,* 77 N.Y.2d 114, 566 N.E.2d 128, 132, 564 N.Y.S.2d 1001, 1005 (1990). Moreover, the Court held that the plaintiffs had no vested

right to the existing zoning classification of their property. *Sudarsky,* 779 F.Supp. at 297.

In *Eastbrook,* the plaintiffs obtained a building permit from the Town which was subsequently suspended until the plaintiffs obtained a wetlands activity permit in accordance with the provisions of the Town's Freshwater Wetlands Protection Law. The Town Planning Board denied the plaintiffs' application for a wetlands activity permit. The plaintiffs claimed that because it had begun construction, the Planning Board acted arbitrarily and capriciously in applying the Town's Freshwater Wetlands Protection Law to its property. The Court held that the issuance of a building permit in contravention of the Town's Freshwater Wetlands Protection Law did not confer vested rights upon the plaintiff; therefore, the Board was not precluded from correcting errors arising from the erroneous issuance of a building permit. *Eastbrook,* 613 N.Y.S.2d at 778.

particular property owners are ordinarily constitutional only if based on benefits received by them." *Nashville, C. and St. L. Ry. v. Walters,* 294 U.S. 405, 429–430, 55 S.Ct. 486, 495, 79 L.Ed. 949 (1935); see also *Norwood v. Baker,* 172 U.S. 269, 279, 19 S.Ct. 187, 191, 43 L.Ed. 443 (1898); *Crandall Public Library v. City of Glens Falls,* —— A.D.2d ——, ——, 629 N.Y.S.2d 100, 101–02 (3 Dept. 1995); *Board of Education of Central School Dist. No. 2 of Town of Alexander v. Village of Alexander,* 197 Misc. 814, 820–21, 92 N.Y.S.2d 471, 477–78 (N.Y.Sup.Ct.1949) *Taxpayers of Twenty–Third Ward of City of Rochester,* 136 Misc. 278, 279, 240 N.Y.S. 778, 780 (N.Y.Sup.Ct.1930).

Thus, HBP's allegations that it has paid an annual special assessment for the construction and maintenance of the sewer facility, if true, would entitle it to the benefit of sewer services. Accordingly, HBP has alleged a valid property interest in the benefit of sewer services that is protectible under the Fourteenth Amendment.

 Having properly alleged that it has a property interest in the benefit of sewer services, to state a substantive due process claim, HBP must still allege that the government's action denying it this benefit is arbitrary or irrational. See *Brady,* 863 F.2d at 215. "Government regulation of a landowner's use of his property is deemed arbitrary or irrational ... only when government acts with "no legitimate reason for its decision." *Southview Associates, Ltd. v. Bongartz,* 980 F.2d 84, 102 (2d Cir.1992) (internal quotations and citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).

In support of its claim that the Defendants acted arbitrarily and irrationally, HBP's complaint alleges first that the State has acknowledged that currently the plant has not surpassed its maximum capacity, but is meeting all effluent quality permit limits; in fact, the State denied HBP's request for a main line extension permit solely on the basis of a "potential for violations." HBP alleges, however, that because it possesses valid sewer connection permits (meaning the State has taken its estimated output into account in calculating the balance of permissible sewage

flow into the treatment plant), the sewage flow generated by the subdivision would not add to the "potential for violations" at the plant. HBP also alleges that, while it is completely denied the benefit of the sewer services to which it is entitled as a property owner within the Sewer District, the County provides 15,000 gallons per day of its total sewage capacity to municipalities located outside the boundaries of Sewer District No. 1.

HBP further alleges that the moratorium on main line extensions was imposed nine years ago in September of 1986, and that, in the intervening years, the State has never required the County to expand, upgrade or replace the treatment plant and the County has never taken steps to demonstrate adequate capacity for future growth. HBP also alleges that, in the intervening years, the State has never required the County to reduce existing sewage flow, nor has the County taken steps to reduce the sewage flow.

Assuming the truth of HBP's allegations, the Court cannot dismiss HBP's substantive due process claim for failure to state a claim.

### 4. Equal Protection Claim

 The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Absent an infringement of a "fundamental right" or the use of a "suspect classification," the rational basis test is the proper standard of review for equal protection challenges to government action. See *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). Under the rational basis test, the Defendants may not exercise their authority in an arbitrary, capricious or unreasonable manner. To be sustained, their exercise of authority must be shown to bear a rational relationship to a legitimate governmental objective. See *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

280

HBP has not alleged that the moratorium's classification affects fundamental rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage. Thus, the question is whether HBP has alleged that the moratorium on main line extension permits is not rationally related to the Defendants' alleged legitimate interest in the regulation of sewer treatment facilities. The rational basis analysis under the equal protection clause essentially tracks the arbitrary and irrational analysis under the substantive due process clause. See *Horizon Concepts, Inc. v. City of Balch Springs,* 789 F.2d 1165 (5th Cir.1986).

In support of its claim that the Defendants' moratorium does not bear a rational relationship to a legitimate governmental objective, HBP alleges, in addition to the allegations discussed above in relation to its substantive due process claim, that property owners who are not in need of a main line extension are permitted to use the sewage facilities regardless of the amount of sewage they generate. In addition, HBP alleges that the moratorium has been administered on an ad hoc basis and is riddled with exceptions.

Assuming the truth of all the allegations in the complaint, the Court cannot dismiss HBP's substantive due process and equal protection claims. HBP has stated cognizable claims (at least for declaratory and injunctive relief with respect to the State) against the Defendants.

In conclusion, the motions to dismiss are denied, except as to the Fifth Amendment taking claims for which they are granted.

SO ORDERED.